ESTRADA V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-01-463-CR

MICHAEL ESTRADA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Michael Estrada appeals his conviction by jury for assault-family violence.  By his first and third issues, Appellant complains that the evidence is legally and factually insufficient to support the verdict.  In his second and fourth issues, Appellant challenges the legal and factual sufficiency of the evidence with respect to his claim of self-defense, contending that he established self defense as a matter of law or that the jury’s rejection of that defense was against the overwhelming weight of the evidence.  We affirm.

BACKGROUND

Michael Estrada (“Appellant”) and his mother argued about the clothing Appellant was wearing as he was leaving their house.  Appellant was wearing two or three necklaces; several big rings; four or five bracelets, including one with spikes; two chains around his belt; a bright red fur hat; and a long trench coat.  Appellant’s mother did not approve of his clothing because she thought he looked like a “freak,” so she told him that he was “not leaving the house looking like that.”  Appellant replied, “Yes, I am,” and said, “I am going to wear what I like,” as he turned and started toward the front door. 

Appellant was seventeen years old, 6 feet 3 inches tall, and weighed approximately 165 pounds.  His mother was sixty-three years old and 5 feet 9 inches tall.  Appellant’s mother grabbed one of the necklaces, with the intention of removing it from his neck.  The jewelry did not break, and Appellant bit his mother.  Appellant then left the house, and his mother called 911 and reported the assault.  When the police arrived, she signed a statement saying that Appellant pushed her and bit her hand and arm when she tried to remove the chain from his neck.  Several photographs were taken of injuries on the mother’s arm and hand. 

Appellant was charged with assault-family violence.  Before trial, Appellant’s mother unsuccessfully attempted to have the State drop the charges against her son because she was afraid it might hurt his chances to get into the Marines.  The matter proceeded to trial after Appellant pleaded not guilty to the charge.  Appellant’s mother testified at trial, stating that another reason she did not want her son prosecuted was because she felt it was “my fault” that her son bit her several times. 

Because Appellant’s mother did not want her son prosecuted, the facts of the incident were heavily disputed at trial.  At one point during trial, Appellant’s mother stated, “We don’t know anything that happened.”  However, she also testified that when she grabbed Appellant’s necklace, her hand somehow got twisted in the chain when he turned, and she could not pull her hand out.  She stated that Appellant backed away, making the situation worse, and he told her that she was choking him.  She testified, in contrast to her written statement taken on the date of the incident, that Appellant did not push her. 

Appellant’s mother further testified she could not remember how many times Appellant bit her, but she admitted the bite marks hurt.  When the State showed her the photographs of her hand and arm, she claimed Appellant caused only one of the marks visible in the picture.  She did agree that the photographs were an accurate representation of her injuries on the date of the incident.  She did not know how a bite mark could have gotten on her arm, and explained, “We think that was his bracelet with the spikes on it.”  However, in her statement at the time of the offense, she had written:  “bit . . . my hands and arms.”  She  acknowledged she still had a scar on her little finger from her son’s bite.  She also testified she thought it was “reasonable” for Appellant to have bitten her several times. 

Appellant testified on his own behalf, that he did not try to push his mother but was blocking her like a football lineman to get her off of him.   According to Appellant, she grabbed his shirt as he started for the door, and during the scuffle, he yelled at his mother to “get the f**k off of me” and  “[j]ust leave me alone.”  Appellant testified that when she pulled the necklace, he could not breathe, was starting to black out, and began experiencing tunnel vision.  He stated he was “telling [his] mother and father both, in English and Spanish” that he could not breathe, but his words came out in gasps and, because “[he] was starting to black out, . . . couldn’t breathe and the circulation was getting cut off,” he only remembered biting her on her “pinky.” 

When asked whether he bit his mother any more, Appellant testified that it was possible.  On cross-examination, Appellant testified that the entire incident happened in a matter of seconds, “at the most under a minute.”  When asked why he did not simply push his mother away, Appellant testified that the first thing that came to mind to was to bite her. 

Throughout trial, Appellant maintained that he acted in self-defense. While Appellant agreed on cross-examination that his mother was possibly trying to discipline him when she was grabbing at his chain and that it is reasonable for a mother to discipline her child, Appellant testified on redirect that he did not believe it was reasonable for a mother to discipline her child by choking off the supply of blood and air to the brain.  Appellant further acknowledged, however, that, if the long mark on his mother’s arm was a bite, that action by him was excessive. 

Appellant’s seventy-seven year-old father was the only other eye-witness to the fight between Appellant and his mother.  Appellant’s father testified through an interpreter that Appellant was not cursing, but his wife was and that she called Appellant a “thug” as he was leaving the house.  He saw her grab Appellant’s chain, which did not break, and choke him as a result.  He denied seeing Appellant push his mother, but he admitted that he did not witness the entire incident.  Appellant’s father further denied that the photographs in State’s Exhibit 2 were pictures of the marks on her hand and arm on the date in question, but also testified that he saw his son bite his mother.  He thought it was reasonable for his son to bite her. 

Colony police officer Logan Stout responded to the dispatch.  Officer Stout testified Appellant’s mother told him Appellant had bitten her and that he observed the bite marks.  Another Colony officer apprehended Appellant and brought him back to the residence where both officers questioned Appellant.  Officer Stout testified that, based on his conversations with Appellant and Appellant’s mother, he determined “[t]hat she was attempting to get the jewelry and clothing off of him, at which time, he lashed out at her and bit her.”  Consequently, the police arrested Appellant. 

Because of the extent of the mother’s injuries, Officer Stout called for a paramedic.  Officer Oscar Rodriguez of The Colony Fire Department responded to provide medical treatment to Appellant’s mother and advised her of the risks of infection.  Officer Rodriguez testified that he knew the long mark on her arm was a human bite mark; however, he did not treat Appellant’s mother because she refused any medical treatment. 

The State also presented the testimony of Susan Calvert-Piel, who was chief family violence prosecutor for Denton County.  Calvert-Piel conceded that she did not witness the incident between Appellant and his mother and that everything Calvert-Piel knew about the case came from conversations with Appellant’s mother and her review of the offense report and statements.  She testified to conversations with Appellant’s mother, in which the mother stated she wanted the charges dropped because the Marines would not take him with this charge and it would be best for him and the family for him to go into the military service.  Calvert-Piel said Appellant’s mother never mentioned choking Appellant or that he had bitten her in self defense.
(footnote: 2) 

After hearing and viewing all of the evidence presented, a jury found Appellant guilty and assessed a punishment of sixty days’ confinement in the Denton County Jail and a $1000 fine.  In accordance with the  jury’s recommendation, the trial court suspended both the jail time and the fine and placed Appellant on community supervision for two years.  

STANDARDS OF REVIEW AND ANALYSIS

Appellant does not challenge the jury charge, which correctly informed the jury that they should pronounce Appellant guilty if they found beyond a reasonable doubt that he intentionally, knowingly, or recklessly caused bodily injury to his mother by biting her with his mouth.  
See 
Tex. Penal Code ann. 
§ 22.01(a)(1) (Vernon Supp. 2003).  As to the issue of self-defense, the charge correctly informed the jury that they should acquit Appellant if they found that at the time of the biting, Appellant was under attack or attempted attack by his mother and that he reasonably believed that biting was immediately necessary to protect himself, or if they had a reasonable doubt as to whether he was acting in self-defense.  
See id.
 § 9.31(a).  

The defendant has the burden of production of some evidence to support the  claim of self-defense.  
Zuliani v. State
, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing 
Saxton v. State, 
804 S.W.2d 910, 913 (Tex. Crim. App. 1991)).  Once the defendant produces such evidence, the State has the burden of persuasion in disproving the defense.  
Id.  
The burden of persuasion does not require the State to produce evidence; rather, it requires only that the State prove its case beyond a reasonable doubt. 
 Id.
  When the jury finds the defendant guilty, it implicitly finds against the defensive theory.  
Id.  

When reviewing legal sufficiency of the evidence to support a verdict, we view all of the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson v. Virginia
, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789
 (1979); 
Wesbrook v. State
, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  When a defendant challenges the legal sufficiency to support the rejection of a defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and also could have found against the appellant on the self-defense issue beyond a reasonable doubt.  
Saxton
, 804 S.W.2d at 914.  

The factual sufficiency standard for a finding of guilt requires us to ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury’s determination, or whether the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.   
Johnson v. State, 
23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  A factual sufficiency challenge to a rejection of a defense requires us to review all of the evidence in a neutral light and to ask whether the State’s evidence, if taken alone, is too weak to support the jury’s rejection of the defensive theory, and also whether the proof supporting rejection of the defense, although adequate if taken alone, is against the great weight and preponderance of the evidence.  
Zuliani
, 97 S.W.3d at 594-95.

To make a determination of factual sufficiency, a complete examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

We reject Appellant’s argument under his third point that the evidence establishes self-defense as a matter of law.  Self-defense, based upon testimony of interested witnesses, Appellant and his family members, was a fact issue for the jury.  
See
 
Saxton
, 804 S.W.2d at 913-14; 
Manuel v. State
, 981 S.W.2d 65, 68 (Tex. App.—Fort Worth 1998), 
aff’d
, 994 S.W.2d 658 (Tex. Crim. App. 1999).  Defensive evidence that is merely consistent with the physical evidence at the scene will not render the State’s evidence insufficient because the jury is solely responsible for determining the credibility of the evidence and is free to accept or reject the defensive evidence.  
Saxton,
 804 S.W.2d at 914.     

We also reject Appellant’s legal and factual insufficiency complaints. 
When a jury’s determination depends primarily upon its evaluation of the witnesses’ demeanor and credibility, it is entitled to almost total deference.  
Johnson,
 23 S.W.3d at 8-9.  The jury’s evaluation of the credibility of Appellant and his parents was crucial to its verdict.  Their testimony was inconsistent and conflicting on critical facts.  Appellant admitted biting his mother, and the jury could have found that their testimony as to a single bite on her finger was contrary to the photographs and the observations of a neutral, experienced paramedic and police officer, as well as contrary to the mother’s statement given at the scene.  Additionally, the jury could have rejected the family’s version of the occurrence at trial-that the mother was choking Appellant by the twisted necklace-as inconsistent with the versions of the incident given at the scene and by the mother to the family violence prosecutor.  Alternatively, the jury could have believed that multiple bites in response to the situation exceeded reasonably and immediately necessary action in self-defense.   

  We have reviewed the record extensively, and under the applicable standards of review, giving due deference to the fact finder’s determinations, we hold that the evidence was both legally and factually sufficient to support the essential elements of the offense and the jury’s implicit rejection of Appellant’s claim of self-defense.
  Accordingly, we overrule Appellant’s four points.

CONCLUSION

Having overruled Appellant’s four points, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  May 29, 2003 

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Calvert-Piel testified without objection that she would dismiss or not file a case when domestic violence was committed in self-defense, but she did not believe that defense was valid in this case as she had learned of no evidence that Appellant was acting in self-defense. 
 In all of the family violence cases she had worked on, she estimated, the victim did not want the State to prosecute ninety to ninety-five percent of the time.  In almost every domestic violence case, she said, self-defense is the “standard defense.”  
These conclusory opinions constituted no evidence of probative value, and we disapprove attempts to bootstrap a prosecution by offering a prosecuting attorney’s opinion that a defendant has no evidence of a valid defense.